JACOB B. KAPLAN, Respondent, *v.* CHARLES LUBIN, Appellant.

First Department, December 1, 1922.

Master and servant — action for wrongful discharge — continuation of employment was, under contract, contingent on business showing net profit — plaintiff had general charge of business and kept books — burden was on plaintiff to show wrongful discharge and he should have produced books to show that business was earning profit — verdict in favor of plaintiff was based on speculative evidence.

In an action to recover damages for wrongful discharge, it appeared that the plaintiff was engaged by the defendant to conduct a business enterprise for the defendant and was to receive as compensation fifty per cent of the net profits; that the agreement provided that the defendant might discontinue the business in case it failed to earn a profit; that the plaintiff kept the books of account of the business; that the defendant closed the place of business and refused the plaintiff further access to the premises, claiming the right to do so under the terms of the contract, and that the books of account were present in court.

*Held*, that the burden was on the plaintiff to show that he had been wrongfully discharged and that it was his duty, if he contended that the business was paying a profit at the time it was closed, to offer in evidence the books of account to show that at the time the business was closed it was actually returning a profit.

The verdict of the jury in favor of the plaintiff was speculative and cannot stand, inasmuch as it was based on a statement prepared by an accountant which does not purport to be a trial balance sheet and which was admitted in evidence as a declaration by the defendant against his interest on the ground that a copy of it had been handed to him shortly prior to the time the business was closed, though the defendant denied having received a copy, and on testimony by an expert accountant based in part on said statement and in part on his own imagination.

APPEAL by the defendant, Charles Lubin, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of December, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of December, 1921, denying defendant's motion for a new trial made upon the minutes.

*Tobias A. Keppler* [*Joseph L. Hochman* of counsel], for the appellant.

*Stern, Barr & Tyler* [*Henry C. Moses* of counsel; *Henry J. Harkavy* with him on the brief], for the respondent.

PAGE, J.:

The action was to recover damages for an alleged wrongful discharge. The defendant was in the artificial flowers and leaves

business.  The plaintiff had for some years been employed in selling cotton piece goods.  On April 4, 1918, the plaintiff and defendant entered into a written agreement wherein it was recited that the defendant was about to go into the business of buying and selling cotton goods under a trade name, and the plaintiff desired to work for the defendant in conducting said business. The defendant thereby employed the plaintiff, for a period of two years, at a compensation for his services of fifty per cent of the net profits of the business.  The defendant was to keep proper books and records of the business conducted by the plaintiff, and of all money received and paid out, the books to be subject to the inspection of the plaintiff at any reasonable time.  The parties agreed to have an accounting semi-annually, and oftener, if either party desired it, to determine if the business was profitable.  The agreement provided that if the business was not profitable for any period whatsoever, as shown by any of the accountings, then the defendant could terminate and end the business at any time, and the employment would terminate without any further liability whatsoever under the contract to the defendant.  The agreement provided that the plaintiff should have a drawing account of $25 per week.  Also if the defendant should at any time have more than $5,000 invested in the business, he was to be allowed an additional four per cent per annum on the excess above said sum, to be charged to the operating expenses, before the compensation to the plaintiff should be figured.

The plaintiff entered upon the employment and conducted the business, the defendant visiting the premises only a few times before December 24, 1918, when the defendant closed the place of business and refused the plaintiff further access to the premises.

The defendant claims that he did this by virtue of his right under the contract to terminate the business at any time that it was shown the business was unprofitable.  The plaintiff contends that the business showed a profit at that time and hence that his employment was wrongfully terminated.

The crucial question in the case, therefore, was the condition of the business at the time the defendant terminated it.  As no inventory was taken and no accounting had at that time, the only way to determine the question with any degree of accuracy was by resort to the books of account kept of the business.  The books were present in court.  The plaintiff refused to offer them, and the court ruled that they could not be received on the defendant's offer, for the reason that they were the defendant's books.

Although the contract provided that the defendant was to keep

proper books and records of the business, it was proved that the books were kept at the place of business under the management of the plaintiff, that the original entries were made by the plaintiff or one of his assistants. An accountant was employed by the defendant, who at frequent intervals, either personally or by one of his assistants, attended at the place of business and posted the books. Once a month the accountant examined the books and drew off a trial balance. The plaintiff testified: " Q. All items that had to be entered in the books were put in those books of account, weren't they? A. Yes, I suppose so." No testimony was offered, or claim made, that the books were not full, true and accurate accounts of the business. The books were thus under the control of the plaintiff and subject to his inspection at all times. The burden rested upon the plaintiff to prove that his discharge was wrongful and that there was a profit in the business at the time the defendant exercised his alleged right to terminate the employment. In a case where a manager of a department of a defendant's business brought an action for a wrongful discharge, under a contract which provided for a sharing of the profits, the Court of Appeals said: " The books and inventories of the department were kept under the plaintiff's supervision and he could have produced these books or papers in court or required them to be produced, and thus the result of the business at the end of the year could be accurately known and clearly established. * * * There is no difficulty or hardship in requiring the plaintiff to prove the net profits at the end of the year in question by the inventories and books of the department made up to the close of the year. * * * We think it was not competent for the plaintiff to resort to vague statements as to the profits of the two previous years when the exact figures at the end of the year were available to him and could have been produced before the jury." (*Brightson* v. *Claflin Co.*, 180 N. Y. 76, 84.)

In the present case the accountant had in November, 1918, prepared a statement which he gave to the plaintiff, and of which plaintiff testified a copy was handed to the defendant at the same time, but which the defendant denied having received. It does not purport to be a trial balance sheet, nor does it clearly appear what it was. The court admitted this statement as a declaration by the defendant against his interest. An expert accountant called by the plaintiff, taking this statement as a foundation, produced a calculation partly based upon the book and partly drawn from his imagination, and it was on such evidence that the jury returned a verdict for the plaintiff. The verdict was a speculation upon speculations of a witness, and not upon the actual facts of the business.

The order and judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, MERRELL and FINCH, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.